# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 15-4061-CR-C-BCW |
| | ) | |
| DILLON MATTHEW NAYLOR, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Before the Court is defendant Dillon Naylor's motion to suppress evidence. Defendant argues for suppression of all physical evidence and statements obtained as a result of a traffic stop which occurred in Sedalia, Pettis County, Missouri on November 18, 2015. The Government has filed suggestions in opposition and a hearing was held before the undersigned.

## Facts

On November 18, 2015, at approximately 12:52 a.m., Sedalia Police Officer Christian Hardesty stopped a grey Chevrolet Impala in the area of East 12th Street and South Center Avenue, in Sedalia, Missouri.[1] Officer Hardesty initiated the traffic stop after he ran the license plate on the vehicle, and the license plate came back registered to a different vehicle.[2] Improper registration of a vehicle is a violation of Missouri law. Officer Hardesty activated his emergency lights to stop the vehicle and then approached the vehicle to make contact with the occupants. Officer Hardesty identified the driver (Erica Scott) and the passenger (Dillon Naylor) as the occupants of the vehicle. Officer Hardesty told the occupants the reason he stopped their vehicle. The occupants told Hardesty that they had just bought the vehicle and showed a paper to Officer Hardesty that was purported to be a bill of sale or some other related document. Officer Hardesty obtained the VIN number for the vehicle and then returned to his police vehicle to run the VIN number and the occupants through his police computer system. While in the

---

[1] There is a police video recording of the vehicle stop (Government Exhibit 1).
[2] The Chevy Impala's license plates were Missouri plates which displayed PK2T0D. The police computer system showed these license plates to be registered to a 1997 Buick. (Government Exhibit 2).

1

police vehicle, Officer Hardesty spoke with officers regarding a burglary that had just occurred involving lottery tickets from a nearby gas station. Dispatch confirmed to Officer Hardesty that Scott and Naylor had valid driver's licenses. Dispatch further advised that Defendant was on probation/parole for possession of a controlled substance and felony distribution, delivery and manufacturing of a controlled substance.

Upon completion of the police computer checks, Officer Hardesty returned to the Chevy Impala at approximately 1:00 a.m. and returned the paperwork and identification to the occupants. No citation was issued. Officer Hardesty then inquired with Naylor and Scott asking what they were doing in the area. Scott and Naylor stated they had just dropped off a truck and trailer. Officer Hardesty told them there had been a burglary and theft of lottery tickets from a gas station in the same area around the time they had left the truck. Officer Hardesty asked if Naylor and Scott would consent to the search of the Impala and their persons in order to exclude them as suspects in the burglary or possession of stolen property. Both Naylor and Scott consented to the search of their persons and the Impala. At approximately 1:02 a.m. both Naylor and Scott can be seen on the police car video exiting their vehicle.

Officer Resch arrived on the scene a few seconds before 1:02 a.m. just as Naylor and Scott were exiting the vehicle. Based on consents to search given to Officer Hardesty, Officer Resch searched Naylor's person. As Officer Hardesty began a search of Scott, he noticed she was nervously putting a hand in and out of her right jacket pocket. Officer Hardesty searched Scott's right jacket pocket and found a torn plastic bag which contained a white crystal substance that field-tested positive for methamphetamine.

After Scott was placed under arrest, Naylor was asked if there would be any other drugs in the Impala, and he replied that there should not be. Officer Hardesty searched the Impala and when he needed to open the trunk, Naylor voluntarily gave him directions on how to get the trunk open. Inside the trunk, the officers located a red and black bag within which was a bundle of cash ($13,000), a blue bag containing a scale with residue, a plastic bag containing three other bags (each of which appeared to contain methamphetamine), and three firearms. At no time did either Scott or Naylor revoke or limit their consent to search given to Officer Hardesty.

### Discussion

Defendant Naylor asserts three arguments: (1) there was no probable cause or reasonable suspicion to stop his vehicle or search his car; (2) the officers unlawfully extended the traffic

2

stop beyond the time reasonably necessary to complete tasks relate to the traffic violation; and (3) his consent to search was not freely or voluntarily given.

**(1) Probable Cause to Stop Defendant's Vehicle**

Naylor asserts that the stop of the Impala occurred without reasonable suspicion or probable cause. This is not supported by the evidence. Rather, Officer Hardesty testified that he observed the Impala was tagged with license plates registered to another vehicle. When an officer observes a violation of the law, he has probable cause to initiate a traffic stop. Whren v. United States, 517 U.S. 806 (1996). See also United States v. Peralez, 526 F.3d 1115, 1119 (8th Cir. 2007) ("An officer who observes a violation of the law has probable cause to initiate a traffic stop, and such a stop comports with the Fourth Amendment.").

Here, Officer Hardesty specifically testified that he stopped the Chevy Impala, Scott and Naylor were driving, because the license plates on the vehicle were not registered to a Chevy Impala. Government's Exhibit 2 shows the license plates on the Chevy Impala were registered to a Buick. This violation of the law supported probable cause to stop the Impala in which Naylor and Scott were occupants.

**(2) Extension of the Traffic Stop was Consensual Encounter**

Naylor argues that Officer Hardesty improperly extended the traffic stop when he returned to the Impala after running the vehicle registration information and identification information as to Naylor and Scott and returned this paperwork to Naylor and Scott, but then went on to ask Naylor and Scott why they were in the area and if they would consent to a search of their person and the vehicle they were in. Upon review of the facts the Court finds Officer Hardesty's questions to Naylor (owner of the vehicle/passenger) and Scott (driver) as to why they were in the area and if officers could search their persons and the Impala they were driving are consistent with a consensual encounter.

After making a traffic stop, an officer may detain the occupants while he completes a number of routine tasks related to the traffic violation, such as computerized checks of the vehicle's registration and the inquiring as to identification, driver's license and criminal history information for the vehicle's occupants. United States v. Munoz, 590 F.3d 916, 920 (8th Cir. 2010). "Once this initial investigation is finished, however, the purpose of the traffic stop is complete and further detention of the driver or vehicle would be unreasonable unless something that occurred during the traffic stop generates the necessary reasonable suspicion to justify

3

further detention or unless the continued encounter is consensual." Id. If the encounter becomes consensual, it is not a seizure, and the Fourth Amendment is not implicated. Id. Therefore, when a consensual encounter occurs following a traffic stop, the officer need not have reasonable suspicion to ask questions unrelated to the traffic stop or seeking consent to search the vehicle. Id.

Whether an encounter is consensual depends on the facts of the case. Id. It is well established that not all personal contacts between law enforcement officers and citizens constitute a seizure for Fourth Amendment purposes. United States v. White, 81 F.3d 775, 779 (8th Cir. 1996). A seizure does not occur simply because a law enforcement officer approaches an individual and asks a few questions or requests permission to search an area. Id. Whether or not the officer has any reason to suspect the individual is involved in criminal activity is not relevant in a consensual encounter. Id. "So long as a reasonable person would feel free to disregard the police and go about his business the encounter in consensual and implicates no Fourth Amendment interest." Id. (citing Florida v. Bostick, 501 U.S. 429, 434-35 (1991)). During a consensual encounter, the person approached need not answer any question put to him, and may decline to listen to questions at all and go on his way. Id. (citing Florida v. Royer 460 U.S. at 497-98).

Circumstances indicative that there is a seizure, rather than a consensual encounter, include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." United States v. White, 81 F.3d at 779. Here, the facts show that Defendant was no longer seized after Officer Hardesty returned the paperwork to the occupants of the car. Following the return of paperwork (vehicle registration and personal identification information as to Naylor and Scott) to the car occupants, Officer Hardesty displayed no weapon and the tone of the entire exchange that followed was cooperative. Although there were two officers present at the scene during the search, the evidence shows that Officer Resch arrived after Officer Hardesty returned the paperwork and consent to search had already been given.[3] While Officer Hardesty did not tell Defendant or

---

[3] The video of the traffic stop shows that at 1:00 a.m. Officer Hardesty returned the paperwork to the occupants of the vehicle. Officer Resch arrived on the scene a few seconds before 1:02 a.m. just as Naylor and Scott were exiting the vehicle. At approximately 1:02 a.m. both occupants of

4

Scott that they were free to leave after he returned the paperwork to them, Defendant and Scott had everything they needed to lawfully proceed on their journey, and could have been on their way.  See Id.  Cf: Florida v. Royer, 460 U.S. 491, 501 (1983) (individual seized when officer retained his airline ticket and drivers license during questioning).   An officer is not required to tell a person they are free to leave in order to make an encounter consensual.  United States v. Santos-Garcia, 313 F.3d 1073, 1078 (8th Cir. 2002) (contrary to defendant's argument, the fact that the officer had not explicitly said they could leave does not establish that the conversation was not consensual).  See also United States v. White, 81 F.3d at 779 ("While it is true that [the officer] did not tell [him] he was free to leave after he returned [his] license and registration . . . . [he] had everything he needed to lawfully proceed on his journey . . . . [therefore the officer's] request to search came during the course of a consensual encounter and was permissible with or without reasonable suspicion.").  Based on the totality of circumstances, the Court finds reasonable person in Naylor's position would have felt free to go about his business after Officer Hardesty returned all the paperwork and no citation was issued.  The evidence shows that Naylor consented to the post-stop encounter, and therefore, the prolonging of the traffic stop in this case does not implicate the Fourth Amendment.  Because Naylor was no longer seized, there was no requirement that Officer Hardesty have probable cause or reasonable suspicion to prolong the traffic stop by a couple of minutes in order to ask Defendant and Scott a few questions and request their consent to search their persons and the Impala they were driving.  Defendant's argument that the traffic stop was unconstitutionally prolonged is without merit.

**(3) Voluntary Consent to Search**

Defendant's assertion that the officers searched the Impala without probable cause is without merit in that the Impala was searched during a consensual encounter during which Officer Hardesty requested consent to search Naylor and Scott and the Impala.  If an encounter is consensual, then even without reasonable suspicions, an officer may ask questions unrelated to the traffic stop and seek consent to search the vehicle.  United States v. Santos-Garcia, 313 F.3d at 1078.  Consent to search is a well-recognized exception to the warrant requirement.  United States v. Farnell, 701 F.3d 256, 262-63 (8th Cir. 2012).  Consent to search may be given either by the suspect or by some other person who has common authority over, or sufficient relationship to

---

the Impala can be seen stepping out of the Impala, indicating their acquiescence to the search request of Officer Hardesty.

the item to be searched. United States v. Munoz, 590 F.3d at 922. Here both Scott (the driver of the Impala) and Naylor (the owner of the Impala) consented to the search of their persons and the Impala without any restriction. See United States v. Capps, 716 F.3d 494, 497 (8th Cir. 2013) (consent to search vehicle given by defendant can be unrestricted or alternatively include boundaries or limit the scope). This voluntary consent given by Naylor waived his Fourth Amendment rights challenge to the search of his person and the Impala. Schneckloth v. Bustamonte, 412 U.S. 218, 242-43 (1973) (While the Fourth Amendment . . . limits the circumstances under which the police can conduct a search, there is nothing constitutionally suspect in a person's voluntarily allowing a search. The actual conduct of the search may be precisely the same as if the police had obtained a warrant."). Naylor was not under arrest or handcuffed during the search, and makes no claim that his consent was not voluntary, nor does he make any allegation of duress or coercion. Id. at 228. To the contrary, the officers noted Naylor to be helpful and conversational throughout the search, and at no time did Naylor revoke his consent to search. At one point during the search Defendant helped the officers open the trunk of the Impala. There is no allegation that Naylor could not understand the officer or officers, and his history of arrests and convictions would demonstrate that Naylor was well aware of his rights.[4] See United States v. Cappps, 716 F.3d at 497 (factors relevant to a determination whether consent to search is voluntary includes "likely awareness of his rights based on prior encounters with law enforcement").

The Court finds based on the totality of the circumstances, that Officer Hardesty believed Naylor's consent to search his person and the Impala were voluntarily and freely given.[5] See United States v. Garcia, 613 F.3d 749, 753-54 (8th Cir. 2010) (whether consent is voluntary is a question of fact from the totality of circumstances the officer reasonably believed); United

---

[4] Naylor's understanding of his right to deny consent to search is further supported by Naylor's later response to officers that same morning, following the search of the Impala, in which he declined an officer's request to search his residence.

[5] Statement by Defendant in his motion to suppress implying that he gave consent to search the Impala after he had denied consent to search his residence and after being afforded his Miranda rights (doc. 25, pg. 3), is an incorrect statement of the facts. Defendant gave consent to search his person and the Impala prior to being given his Miranda rights and prior to his denying consent to search his residence. It was only after the search of the Impala revealed the evidence at issue in this case, that Defendant was taken into custody, given his Miranda rights, and subsequently told officers that he would not consent to the officers searching his residence.

6

States. v. Gallardo, 495 F.3d 982, 988 (8th Cir. 2007) (discussion of factors to consider in totality of circumstances determination as to when consent is voluntary). Therefore, be*c*ause consent to search is an exception to the warrant requirement, the officers did not need to have probable cause to search Naylor or the Impala. United States v. Chaidez, 906 F.3d 377, 380 (8th Cir. 1990). Defendant's claim that there was no reasonable suspicion or probable cause for the search is meaningless in the context of a valid consent to search. See United States v. Castellanos, 518 F.3d 965, 969 (8th Cir. 2008) ("An individual may validly consent to an otherwise impermissible search . . . [when] consent is freely and voluntarily given."); Schneckloth v. Bustamonte, 412 U.S. at 218 (consent obviates the need for probable cause or any other Fourth Amendment consideration).

## Conclusion

As set forth in this Order, the Court finds there has been no violation of Defendant's Fourth Amendment rights resulting from the traffic stop, the consensual encounter or the search of Defendant and the Impala.

IT IS, THEREFORE, RECOMMENDED that Defendant Dillon Naylor's Motion to Suppress be denied. (Doc. 19).

Counsel are reminded they have fourteen days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections. Failure to file and serve exceptions by this date shall bar an attack on appeal of the factual findings in the Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

Dated this 27th day of October, 2016, at Jefferson City, Missouri.

/s/ *Matt J. Whitworth*
MATT J. WHITWORTH
United States Magistrate Judge